Good morning. May it please the Court. My name is Mark Thierman. I represent G.E. Chen and G.E. Chen Construction. Johnny Carson once said the worst thing in the world is to be involved in a lawsuit when you're right. And this is exactly what happened to Mr. Chen. That's the old ancient curse. May you have a lawsuit with a valid defense. That's right. And I'm glad to see some people on the panel, at least we'll remember Johnny Carson. The panels are getting younger and younger as I get older and older. We're old enough, I think, all of us. Most of us up here remember Jack Barr. Yes. I do, too, actually. I used to watch him in my pajamas when I was little. The point that this appeal is about is about $300,000 or $208,000 of attorney's fees on a case that the employer essentially won almost hands down. Was there an offer of judgment? No. So really what happened is you lost, but you lost small on a case where there was a huge claim against you. I don't think we even lost small. It's de minimis. Nobody even – we weren't talking. I mean, this was a $7.2 million case. Sure. This is pocket change compared to – If someone walked into my office – I mean, this is not a case where the employer said, I'm going to fight to the heck to say, you know, $12,000 of overtime, and it costs $200,000 to get there, in which case the employer deserves the pay. How do I tell from the record whether this was a collective action or not? Well, I think there are three things you can look at. The first is the fact that – Give me page numbers if you can. Oh, I can give it to you from the – I mean, we've got the excerpts, or I've got the critical excerpts here, and I'm trying to tell if it's a collective action. Well, the first thing is two of the five people didn't file – didn't – weren't even in the – weren't even in the allegations. So they came in later. What difference does that make? Well, you don't have people just popping into a lawsuit unless it's a collective action. If it was an FLSA straight claim, they would simply file right to – right to sue letters or consent to sue things, and they would be in the – they would be in the lawsuit. You don't get people just popping into lawsuits unless they're in the – in the complaint. Well, the Fair Labor Standards Act count of the complaint states in its heading that it is brought on behalf of named individual plaintiffs, and the allegation is the individual plaintiffs reallege such and such. The individual plaintiffs make a claim. Right. The other allegations in the complaint, specifically the 17200 allegations, say it's on behalf of everybody and include by reference the FLSA as the predicate act. The allegations for wages include overtime, and there's no overtime under state law, and that's on the – both the 17200 and in the Bridger contract claim. And finally, again, the named individuals would have been three out of the five people, not all five. So obviously the people were popping into that complaint or that allegation, they were shifting from the other allegations into that allegations. Has there been any effort by the parties to utilize the mediation services of our circuit? Twice. Okay. And before that, at trial, and before that, you know, I don't even – To be candid with you, if it was a $12,000 claim, we wouldn't be here. I mean, the cost of coming here is too much. Well, to sort of paint the general picture of this, the – it's sort of in three stages. The thrust of the complaint was that your client violated the Fair Labor Standards Act, right? No. The thrust of the complaint was that my client violated the QE-TAM or False Claims Act. I understand that. The step – you couldn't have gotten to the QE-TAM without the Fair Labor violations. Oh, sure. Oh, absolutely. If you'll permit me to describe it, then you can comment on that. Okay. The sort of initial in-the-door step is violations of the Fair Labor Standards Act. And at the end of the day, your client was found to have violated the Fair Labor Standards Act, right? Let me – The answer to that is yes, isn't it? Well, the answer to the second question is yes, not the answer to the first predicate is yes. Okay. And the next step is the plaintiff contended that your client had willfully and intentionally withheld that information from the United States government. That's their QE-TAM complaint. No. The QE-TAM complaints are over classifications and tons and tons of people on the job site that never showed up in the certified payrolls. There was some FLSA – I'm sorry. There was some overtime in the QE-TAM complaint. The basis for the – after the bench trial for Judge Jenkins' finding that there was – there's no QE-TAM liability, which produces the trebling, right? And also sweeps in all the many other people. That's the only way to get up to $6 or $7 million is through trebling. Yeah, but it's 2.2 without it, without the treble. All right. 2.2. The basis for the finding that there's no QE-TAM liability was that the plaintiff did not prove scienter. Yes, but that was over classification. Okay. And it was – the QE-TAM had two real aspects to it. The first was you had too many hours that you didn't report. As people were working more hours than were showed up on the certified payrolls. And the second is you misclassified them. As to the first, the too many hours, they had an expert who didn't know what he was doing testify it takes 10 hours to install this window. And we proved in court it takes 45 minutes. Okay. And the – we did it in deposition and we did it again in court. That took away all the shorting of hours or the failure to report hours, which is for people who weren't present. But at the end of the day, the plaintiffs did partially succeed under a Federal statute that allows the recovery of a reasonable fee, right? The plaintiffs succeeded under the FLSA individually for themselves, not for the $2.2 million. So is the answer to my question yes or no? They succeeded under a Federal statute that allowed under a Federal. Under a Federal statute that permits the recovery of reasonable fees.  Okay. Now, I've read Judge Jenkins' order granting their fees in some detail. First of all, he credited them for reducing themselves some of their requests, right? Yes. He knocked out, as they did, 3, 4, 5, 6, the efforts of 3, 4, 5, 6, I think, younger lawyers who didn't spend a whole lot of time on the case. Right. And at the end of the day, reduced the amount they actually requested by 67%. Right. What's wrong with that? Because it's the result is absurd. The result shows that the math is mechanical, but not necessarily. What's your best case for disproportionality of result equaling no recovery? Hensley. Well, no recovery, I would take a remittance of 15 grand or 20 grand in legal fees, fine. Where Hensley says you do look at, and the math he did was bad because he included in it the claim, the $30,000 in order to get the multiple that he says were not recoverable for fees. I think what you're saying there is 220,000 on 50,000 is bad or not, but 220,000 on 7,000 is really out of line. Exactly. Is that right? That's what Hensley says. That's what I say, yes. Do you have anything in addition to Hensley, some circuit court case where they're talking specific numbers and saying this kind of relationship between fees and results is out of line? I apologize. I'm off the top of my head. I don't. I do think that there's got to be a point where it becomes the tail wagging the dog. Counsel, I guess you have to take me back one step. The plaintiffs recovered a total of 47,000 or something in the action. Right. Okay. And so if you take that figure and not your $7,000 figure, it's not at all disproportionate, even if proportion is the touchstone. Assuming that proportion is the touchstone, here's my question. What case, if any, do you have that says that when fees are awarded under the state statutes that were involved, that you can only look to the smaller amount? Do you have a case that says that? There were no fees awardable under the state statute that were involved. Even under Code Section 1021.5? He denied those fees. I mean, he specifically made a finding. He denied those fees. And he also denied the fees on the breach of a contract theory. And why did he do that? Probably because if he had done that, then he would have to compare their recovery, their $50,000 or $30,000, to the defeated claim under those sections, which was $300,000, and declare that the plaintiff was not the prevailing party, but the defendant was. You cannot use the portion of the case where defendant prevails to argument your fees, and for which the fee statute would provide for us getting fees. That $30,000 was out of a $300,000 claim. Well, that's assuming that the reciprocal section applies and not the one-way section. No, no, no. If he did, if he. You're saying you could have gotten fees, but that assumes that. Well, no, I'm saying. Some argument about which section applies. No. Under 1021, or under a breach of contract, there's a fee-shifting provision, 1717, of the California Code of Civil Procedure. If those were the sections, forget the 218.5 of the Labor Code, they were not prevailing party in those sections. Therefore, they could not recover fees under those sections. Where did the $50,000 or $48,000, $47,000, whatever it was, come from? $7,000 for overtime under the FLSA. Almost $8,000, but okay, go ahead. $30,000 out of $300,000 over misclassification, calling people carpenters instead of lasers, or lasers instead of using the split rate instead of using the higher carpentry rate. And what was the statutory basis for the misclassification claim? The statutory basis for the misclassification claim? And what statute does that fall under? Well, they were saying it was the prevailing wage law and that we had misclassified, and then they used that as the predicate for the CWI-TAM, that the false, that the certified payrolls were incorrect. Section 1194. No. The 1194 is wage orders. 1194 only deal with overtime, and in those years did not involve ---- I thought that dealt with failure to pay the prevailing or minimum wage. No. It deals solely with failure to pay minimum wage under wage orders, which at that time did not include the construction industry. Let's assume that we just ---- I'm sorry, go ahead. Can I back up for a second? Yes. I think you just answered me and I didn't understand it. All right. Suppose that a carpenter is misclassified as a glazier, so he's paid lower glazier wages. Right. Instead of higher carpenter wages. He recovered. That's what the 30 is. A bunch of these people recovered what amounts to nickels and dimes compared to what's at stake, but they recovered $30,000 for that. Right. Under what provision of law did they recover the $30,000? The umbrella provision is the 17200, which is the unfair competition act. The predicate act, if you will, what the 17200 sweeps in as the violation would be a violation of the prevailing wage law, which is 1772, 1775, 1770 of the labor code, not 1194. Now I want you to assume for the sake of this question that 1194 applies. I know you disagree with that strenuously, but I'd like you and you're not going to give it up by answering my question. Assume that 1194 applies to the rest. Are plaintiffs entitled to fees if they prevail under 1194? Yes. Yes. Okay. If it was an overtime claim under 1194, they would be provided to reasonable attorney's fees. Again, the word reasonable, yes. Okay. So if they are entitled to fees on both the 8,000-ish and the 30,000-ish. Oh, I'm sorry. Then they'd be entitled to fees that pertain to the whole amount. The 1194 would go to the 8,000. It would not go to the 30. And the reason it would not go to the 30 was because 1194 talks about overtime. I thought that was the one that dealt with prevailing and minimum wages. Not prevailing. Minimum wages under the wage orders. And minimum wage is 625. I need for you to just assume with me that 1194 applies for the sake of my questions, because I want to be really clear about this. If 1194 applies and the Fair Labor Standards Act applies, then they are entitled to fees that pertain to their recovery of the entire 48,000 or whatever it is, correct? If you assume that the prevailing wage is the minimum wage, yes. Say yes or no. Okay. So a lot, in that respect, something hinges on figuring out whether 1194 is the applicable. Well.  For 30 years, 1194 didn't. Prevailing wage and minimum wages are not the same. It doesn't say prevailing. It says legal minimum wage or legal overtime compensation. Exactly. Are there judicial decisions? Yes. There's a court of appeals decision out of Sacramento that uses, that talks about the prevailing wage being a minimum wage. There's Judge Levy who said in court one day that was thinly reasoned and refused to follow it. I have no idea what the California Supreme Court would do. There's a Cal App case that says prevailing wage is minimum. Fire sprinklers, 699, 669, I believe it is. Fire sprinklers. G&G fire protection. In the answering brief, there is a footnote 9 that contains three citations, road sprinkler fitters, OG Sansone, and Metropolitan Water District, which is an old but Supreme Court case. Are those the cases that discuss prevailing as a minimum wage? Only the last. Only the first, fire sprinklers. The other cases talk about, one talks, OG Sansone is truck drivers who are coming onto the site. The really old case, Metropolitan Water District versus Witset. You know, I don't think, well, prior to G&G, prior to the fire sprinklers, there was no case that said, and nobody believed, that 1194 would include prevailing wages. If there is dicta in there, I'm unaware of it. And OG Sansone certainly doesn't, because OG Sansone says you can't sue directly. You have to sue as a breach of contract on a third-party beneficiary. So OG Sansone actually contradicts that, because otherwise, if it was a minimum wage and 1194 of its equivalent was around during that time, you would have been able to sue directly. OG Sansone says you have to do it as either a third-party beneficiary or you go through the labor commissioner. You cannot directly sue for minimum wages because of prevailing wage violation. You have to go through the labor commissioner or you have to do it as third-party beneficiaries to the contract. And what case was that? That was OG Sansone, which is the – That's footnotice. Yeah, it's a Supreme Court case involving truck drivers who delivered to prevailing wage sites. I guess the other part of the argument is that under 218.5, why aren't we prevailing? Every cause of action is about wages, whether it's dressed up in 17200 or a qui tam or whatever. And to distinguish between the question you asked me, and I wasn't being invasive, the thrust of that was that it was misclassifications where you had too many people working too many hours and you weren't putting them on the payroll. It wasn't about FLSA overtime for off-site work, which is what they were claiming. They won for off-site work, preliminary and post-preliminary work, which was not included. If you have that off-site work, even if you throw it into that claim, that's not the thrust of their complaint. The thrust of their complaint was for misclassification and this expert testifying as to how many hours it ought to take when in reality it took. I'm missing something there. Okay. One way to read this combination of 1194 and 218.5 is in an action for wages or fringes, the prevailing plaintiff gets attorney's fees one way or the other, but not both. 218.5 is a two-way statute. That is, the prevailing party gets attorney's fees. 1194 is a plaintiff's only statute that says that if it's a wage claim for overtime or minimum wage, and I, again, stick to my guns, I think that means the generally applicable minimum wage to everybody that you could look at. You think minimum wage means what the statutes call minimum wage? Right. And not the fact that it is a minimum wage. Rather, it's minimum wage, meaning minimum wage, means what the statute calls minimum wage. Because you can't know what the minimum wage are when you've got these classifications. You do know what the generic minimum wage is because it applies to everybody. Anyway, but when you have that statute, the 1194 statute, then it's a one-way street and only the plaintiff recover. And I think what Your Honor was asking me is why can't I include the $30,000 in there and then get to the five-to-one ratio, which would make it reasonable, and the answer was if you look at the complaint, they didn't even plead 1194 in the complaint. Well, is there another legitimate way to look at it on the part of the district court, which is what I think the thrust of the district court's discussion, one way to read it, is even that all these claims were pretty closely related and intimately bound up with each other, and the lawyers could not be doing one without doing the other. They prevailed on some state law claims as well as under the Fair Labor Standards Act. It was one related ball of wax. They got almost $50,000. And that's the number that I'm going to look at in terms of the reasonableness of the fee. And to which we respond to if it's all one ball of wax, then we're prevailing. And if it's all one ball of wax. Oh, you lost not as badly as you could have. That doesn't make you prevailing. Well, the defendant can only loss not as badly as originally claimed. And yet it is a two-way statute under 218. Fair Labor Standards Act isn't, though. Fair Labor Standards Act is a two-way statute, too. Well, you lost. I lost in the Fair Labor Standards Act for those people, right. So I get all the other people that could have, because if you really want to portion it out, they were there for six weeks of time, and this trial was not about their six weeks of overtime. This trial was about everything else. It seems kind of doubtful the law firm would have spent hundreds of thousands of dollars worth of time to get $7,000. And it was also doubtful my client would have spent hundreds of thousands of dollars defending against that. And you asked originally was there an offer of judgment, and the answer is no, because nobody was worried about $12,000 on this thing. Nobody was thinking about it. In Alaska, we've had English rule for many years, and that's the way you turn a small loss into a win is with an offer of judgment. But I don't think that works under these statutes. I don't think it works, and I also think that the bottom line is you can't include it on one side as a minimum wage and say, okay, you lost $50,000, and the multiple is good. But then you have to give us credit for winning all the ones that they didn't, all the people, just the number of people. Did the union itself lose a case to you under a two-way statute? The union itself lost a case to me under a two-way statute, 218.5. They brought a wage claim. They are the ones who really will wind up paying anyway. These people are long gone. And they're the ones who lost everything. They recovered not a penny, and they recovered not a penny on behalf of anybody because, after all, according to them, the FLSA was for individuals and therefore not on behalf, but not by the union. The standard of review for the reasonableness of an attorney fee is set by Hensley? Right. And do you agree that it's a clear abuse of discretion? Yes. That is the language Hensley uses, isn't it? Yes. Thank you. Thank you. I'll reserve time. Thank you. Actually, you used it all up. And more. Good morning. Keep notes anyway just in case we want to hear from you and invite a minute of rebuttal. Blythe Michelson on behalf of plaintiff's respondents. With respect to the issue of what constitutes the minimum wage under 1194, if you take a look at the respondent's supplemental excerpts of record, and I'm looking now on page 119 of the merits appeal, which is a portion of the phase nine contract for the airport. What was that supplemental excerpt? Excerpt of record page 119, which is a portion of the contract involving phase nine. And under paragraph 25, it describes the prevailing wage scale and says, I'm quoting now, the minimum compensation to be paid for labor upon all work performed under this contract. And then it goes on later in the contract, and we've also ---- That really doesn't really contribute very much. I mean, that's the contractual amount to be paid, and the question is not what the contract says, it's what the statute means. I understand that. And then when you look later in the contract, the contract references the statute, and now I'm on page ---- Yeah, but the statute has to reference the contract in order to incorporate the contract. It doesn't matter that the contract references the statute. Well, the statute then describes how you go about determining the minimum prevailing wage, and it references the labor code. And the labor code specifies in section 172.3 that it's the Department of Industrial Relations that is supposed to specify what the prevailing wages are. Counsel, help me on a couple of things that are on my mind. When I try to figure out what reasonable attorney's fees are on a suit for money damages, I tend to start with the very ancient custom of American attorneys of a one-third contingent fee. So you win $7,000 for your clients. You're entitled to a little over $2,000 in attorney's fees. You win $50,000 for your clients. You're entitled to, I don't know, what's that, $17,000 in attorney's fees. In Alaska, we've had English rule on everything. We don't follow the American rule. And it was always considered unethical that the lawyer should make several times as much as his client. I don't get it where we start out with reasonableness being some multiple of what the client gets instead of some fraction of what the client gets. Well, this case, Your Honor, with respect to the FLSA and the wage claims, the arrangement with the clients was that if there was an independent statutory basis for attorney's fees, that the attorneys would pursue that. Well, the ethical concern, it seems to me, is you've got these Chinese wage earners getting nickels and dimes while the lawyers get big bucks. It creates an incentive to use them for cannon fodder instead of getting them a quick settlement. Well, as the opposing counsel admitted, there was never an offer of judgment in this case with respect to the five named plaintiffs under their FLSA causes of action and under their labor code causes of action. Simply no offer of settlement. So we were forced to go to court. They testified. Oh, you mean you kept trying to get them their 7,000 and the employer wouldn't talk to you? There was, as I said, no offer of settlement with respect to their specific claims. I understand that you wanted to get millions of dollars and put them out of business. Neither side, they didn't make an offer of judgment. Neither side was trying to get these people that were entitled to $7,000 their $7,000. There were multiple causes of action. It was our position that all of the workers on that project were entitled to get the proper prevailing wage rate, and that was involved in both the False Claims Act cause of action and also in the Section 17200 cause of action. So you're admitting then that there was no serious attempt to get $7,000 for the people that were owed $7,000? There's always a serious attempt, Your Honor, to try to settle cases from my perspective. With respect to these named plaintiffs, they were never offered the amounts that they said they were entitled. They were accused of being fabricants. Isn't that the other side of the coin? At no point during the litigation did the counsel representing the chin come to you and say, well, we think this is a $7,000 case. Here's $7,000. Go away. That's correct. With respect to the named plaintiffs. I mean, there were still other. Nobody cared about the named plaintiffs here as far as I can tell. Well, with all due respect, Your Honor, I and my co-counsel cared very much about the named plaintiffs, and that's why this action was brought on their behalf, because they were not being properly paid under the prevailing wage laws and under California state law. And we also felt that other workers on the job were also not being properly paid. And in addition, the city and county of San Francisco and South San Francisco and the city of Millbrae and the U.S. government were not being properly acted toward with respect to the false claims. And if you take a look at the Judge Jenkins case. I guess you lost on all that, right? We lost because the judge determined it was negligence rather than recklessness. Otherwise, we would have won on the False Claims Act causes of action. So it was that simple determination that he made, that it was negligent rather than reckless, as to how this particular employer conducted itself. So the defendant was wrong, and the only question was whether it was wrong deviously or just wrong carelessly. Absolutely, Your Honor. That's absolutely correct. The wage rate that some city employee in charge of wage rates told them to pay, and that was wrong. No. When you read the transcript, and we've included that in the package, Your Honor, if you take a look at page of our supplemental excerpt of record, and you take a look at the two individuals from the city of South San Francisco who testified, one was Mr. Harkness, and his testimony can be found on pages 27 and 28 of the supplemental excerpt of record. And he testified, when he was asked, does he make any effort to discern or calculate about the appropriateness of a particular classification, and he said the answer was no. And the reason was, is because under the contract, that's the responsibility of the contractor to do that, and it's not the responsibility of the awarding agent. If you take a look at the supplemental excerpt of record on page 121, it's bolded there. I'm not going to bother looking, because we don't relitigate that and retry that part of the case at this stage. Okay. Let me ask about something else. Walk me through the logic of how the 7,000, why the attorney's fees were awardable based on 50 rather than 7. Okay. With respect to the analysis that Judge Jenkins did, and he did a very thoughtful analysis, usually using the factors in Hensley. Focus. I'm trying to get the logic. Right. The logic is, after the lodestar was determined, and based on his experience with the case, and based on what had been done in similar FLS cases that he cited in his decision, he determined that a 67 percent reduction was appropriate. So far you have not said a word in response to my question, which is, why should the amount of success be treated as 50 rather than 7 for purposes of the attorney's fees award? And the reason that the judge gave was that there was recovery of about $47,000, excluding the interest. Was that recovery in categories where attorney's fees can be awarded? We submitted to the court three different bases for attorney's fees. Judge Jenkins was silent as to whether the other two were appropriate with respect to the plaintiffs. We asserted 1194, section 1194 of the Labor Code, and section with respect to the third-party breach of contract action, and section 1021.5 with respect to the 17200 cause of action. Judge Jenkins never reached those issues with respect to the plaintiff's motion for attorney's fees. He did reach those issues with respect to the defendant's motions for attorney's fees and specifically rejected the defendant's claims for attorney's fees under 1021.5 and under the Labor Code. Does use of the 50 as the measure of reasonableness stand or fall on whether the recovery in that amount was a minimum wage recovery under 1194? No, Your Honor. The judge, in my review of the Ninth Circuit Authority and the U.S. Supreme Court Authority, the district court who has the experience of the case is supposed to take into account a variety of factors. It's not a simple mathematical calculation. That's especially the case with regard to the Fair Labor Standards Act, where you're trying to enforce an important statutory protection of making sure people get the proper minimum wages on jobs. Can I ask you about 1021.5? Opposing counsel, as I understood it, said that the district court had specifically refused to grant plaintiffs any fees under 1021.5. Is that your reading of what the district court did, or was that one of the areas in which the court was silent? The court was silent on that, Your Honor. The court made very clear that the court viewed the recovery the plaintiffs received as compensatory damages under the FLSA and not simply as a nominal amount. Did the union lose on any claims against the employer? A, did it lose on any? I think the answer is obviously yes on that. And B, did it lose on any where attorney's fees are awardable on a two-way basis? When you look at the statute, the union was only involved in the False Claims Act causes of action and the 17200 cause of action. The union was not involved in any of the other causes of action. So the causes of action involving the Fair Labor Standards Act, the causes of action involving the labor code violations, the causes of action involving the third-party breach of contract, the union was not involved in any of those causes of action. With respect to the False Claims Act cause of action, the standard is clearly frivolous, which Judge Jenkins determined the False Claims Act causes of action not to be clearly frivolous. With respect to the 17200 cause of action, the analysis is under Code of Civil Procedure, Section 1021.5, where you have to – where the defendant would have had to provide some kind of public benefit and not be litigating the case for its own business reasons. And the judge specifically found that the defendants were not entitled to attorney's fees under 1021.5. We also – the judge also determined in their – in the judge's denial of the defendant's cost bill that the defendants were not the prevailing parties in this case. And I would submit – Okay. Now, why is it that we do this parsing so that the union's not liable, but we don't do the parsing in order to decide whether the 50 or the 7 is the right measure of success? As I explained, with respect to the causes of action, we sought attorney's fees under all the causes of action under which the individual workers were successful. In order for the union to be held responsible for attorney's fees, they need to be involved in the cause of action that would be the basis for the attorney's fee award. And there was simply no cause of action that the union was involved in relating to the specific labor code violations. They were only, again, as I said, involved in the False Claims Act cause of action and the 17200 cause of action. And with respect to Section 17200, the plaintiffs were the prevailing parties in that case, and they got a recovery of over $30,000. Is there any authority that says that the traditional one-third contingent fee cannot be among the measures that Hensley would suggest consideration of? Hensley talks about taking into account the success of the party, but it also makes clear in other case authority that we've cited with respect to False Fair Labor Standards Act cases that it's not as important in a Fair Labor Standards Act case as it is in other kinds of cases because of the important statutory Federal policy in trying to make sure people are paid the proper minimum wages and overtime compensation. Now, with respect to the collective action issue, there were only two causes of action that involved more than the five main plaintiffs. That was the causes of action related to the False Claims Act and the 17200 cause of action. All the remaining causes of action, including the Fair Labor Standards Act cause of action, only involved the five main plaintiffs. Consequently, there's simply no basis when you look at the nature of the cause of action to assert that that was a collective action. The 17200 cause of action is a different cause of action than the Fair Labor Standards Act cause of action, and it's not appropriate, as the defendant's attorney has done, to simply say that because that involved more than the five main plaintiffs, that somehow the Fair Labor Standards Act cause of action involved more than the five main plaintiffs. Now, with respect to Labor Code Section 1194, there's nothing in the case authority that we cited in our brief at page 25, and there's nothing in the specific language of the Labor Code itself that limits that to rulings of the Industrial Welfare Commission or Industrial Welfare Commission orders. Where you have to win on that, though, to win, do you? No. If, for example, 1021.5 applies, that's good enough. Right. And quite frankly, our position is that even if Judge Jenkins' award should be affirmed, even on its own terms, which only specifically addresses the Fair Labor Standards Act, because as was pointed out, it's a clear abuse of discretion standard. The judge clearly did a very thoughtful decision. He went through all the various factors, and he determined based on his experience of the case that the 67 percent reduction was appropriate after the plaintiff's counsel had already significantly reduced their fees in order to reach the Lodestar amount. Now, what's significant with respect to the defendant's motion for attorney's fees is they only brought that motion against the union. They did not bring that motion against the individual workers. Therefore, in terms of analyzing that motion, you need to look to see which causes of action was the union involved in. And as the judge pointed out in his decision, the causes of action that involved the labor code violations were not the causes of action in which the union was involved, and that was part of the basis that Judge Jenkins relied on in making the determination that there should be no fees awarded against the union. Now, with respect to the Fair Labor Standards Act issues, one of the issues that was hotly contested had to do with whether prevailing wages were required to be paid for work at the warehouse and for work traveling between the warehouse and the various houses. And Judge Jenkins found in favor of the plaintiffs, and that was part of the time that was utilized in coming up with the award under the Fair Labor Standards Act. And there's both federal and state authority that also supports that determination, which even to this day the defendants are still contesting. So as you can see from the record that basically even up to today the defendants have not given up on a variety of issues with respect to even the Fair Labor Standards Act, and that this was not a simple case that was readily resolvable at an early stage of the proceedings with respect to the five named plaintiffs who ultimately prevailed. Thank you. I'd like to reserve whatever time I have to respond to that. You don't get to respond. The winner below doesn't get to give the rebuttal argument on oral argument. First, you asked about settlement negotiations. I assume you were talking about offers of judgment. I have not talked about nor disclosed any settlement negotiations. I don't think you want to hear about them. I could go on about them. Mike Michelson was actually privy to a lot of them. But I don't think that's in the record or it's proper to divulge. So when we talk about offers of settlement, I assume you mean offers of judgment. I assume that when you ask the questions on both sides. Second thing is 1021.5 can't apply because this doesn't benefit a large group of people. That's one of the criteria. There are five people this benefits. What can't apply? 1021.5 can't apply to their benefit because it doesn't benefit a large group of people. That is one of the criteria for 1021.5. And the third thing is that 17200 is an enabling statute. It doesn't have its own terms. And the enabling statute here was a wage claim. And 218.5 of the Labor Code says any action. It doesn't say a statutory three-year statute of limitations wage claim. It says any action to the enforcement of wages. And the carpenters brought a 17200 claim for wages and brought a QUETAM claim for wages. That's a wage claim. It may be dressed up in a different suit, but it's a wage claim. And under 218.5, wage claims are two-way statutes. Prevailing party gets attorney's fees. Thank you, counsel. International Brotherhood v. G.E. Chin Construction is submitted. We're recessed until 9 a.m. Thank you.
judges: Kleinfeld, Hawkins, Graber